Please call the next case. Yeah, I wish I could tell you I'm bringing you a lot simpler case than these first two. It's interesting. It's interesting, but The decision, the arbitrator's decision was wrong as a matter of law for several reasons. It was also against the manifest way of the evidence. The commission adopted the decision of the arbitrator. And in that decision, the arbitrator says, That is not the principal issue. Not any issue under our OD Act. The real question has more than one part. The first question is whether the occupation disease was a causative factor or did it hasten the death. That requires two other determinations. Did he have a pulmonary disease and was the disease caused or aggravated in part by the occupation exposure? And the difference is not subtle. Dying as a result of exposure to an occupation disease indicates that the disease was the primary or the sole cause. The petitioner's burden isn't that high. In this case, the pneumoconiosis was not the sole cause of death. The death certificate said the immediate cause of death was aspiration pneumonia. And Dr. McClintock, Dr. Selby, and my expert, Dr. Goodwin, all agreed with that. But the fact is that not everybody that has aspiration pneumonia dies from it. And so the question becomes, why did Mr. Quick die from this aspiration pneumonia? And the answer is that his lungs were so compromised from his severe pneumoconiosis that he was predisposed to that pneumonia and his lungs were too damaged to recover. His pneumoconiosis in that factor was a causative factor in the death. Mr. Rousseau, you claim that the decedent suffered from a number of medical conditions. Yes. Totally unrelated to CWP. And then Dr. Goodwin comes along and provides an opinion that initially, obviously, is supportive to your position. But then, of course, he makes sort of an interesting acknowledgment, I believe. It's possible for an individual who has CWP to die from a pulmonary problem completely unrelated to CWP. So how does that affect the analysis? Well, every tub sits on its own bottom, as we say in southern Illinois. This case has to sit on its own bottom. And, yes, you can die from something other than pneumoconiosis. He gave the example of gunshot wound in the chest. You get shot through the chest, well, the pneumoconiosis didn't kill you. If, in fact, in this case, if there were evidence that what happened is in his aspiration pneumonia, he actually strangled. He vomited, he sucked it back up, and within a minute and a half, he's gone because he drowned on it. Well, the pneumoconiosis wouldn't have been involved in that either. But that's not the way this worked. There's no evidence to that fact. The arbitrator, in my opinion, used the wrong standard. And the facts would support her standard, but not the standard under the Act. The factual problem is whether he had pneumoconiosis. And here, there's more than just one absolutely wrong factual determination. Here's the big one. At the end of the arbitrator's decision, she says, quote, The critical question is whether Dr. Goodwin's opinions carry more weight than the opinions of Dr. McClintock and Dr. Selby. Well, that's wrong because Dr. McClintock was in agreement with Dr. Goodwin, not with Dr. Selby. Dr. McClintock was Peabody's witness, not Mrs. Quick. Peabody called the treating doctor. In his deposition, it was Peabody's job to score the points, not Mrs. Quick. Can you tell us how long McClintock treated the decedent? How long was he in the treating position? About seven years. Okay. And obviously, his opinion was that he didn't have CWP, right? No. He said he didn't have an opinion. In fact, this is very critical to the case where you're going here. And there are a series of questions I want to go through that prove that. But Peabody asked the question, how is pneumoconiosis diagnosed? This is the key of the case. It asked that question after it asked whether Dr. McClintock had ever diagnosed pneumoconiosis. And he said, well, I found a reference to pneumoconiosis by Dr. Randag, the prior treater, when I read the chart. If you go back to my initial interview with John, there may have been a mention about it, but I never diagnosed it. And then he said why he didn't diagnose it. He wasn't looking for it. He didn't say Mr. Quick didn't have it. He said he didn't diagnose it. And then he said why he didn't diagnose it. And he said co-workers' pneumoconiosis is a pathologic diagnosis. Quote, it's diagnosed by pathology at the time of death. In other words, the real diagnosis of pneumoconiosis comes at an autopsy. We don't run into many of them now, but that is it. And in that, Dr. McClintock does not agree with Dr. Selby at all. He agrees with Dr. Goodwin. Now, respondent knew that this testimony was not what it wanted to hear. So it asked Dr. McClintock that pneumoconiosis can be diagnosed with chest x-rays. And McClintock said, quote, you cannot just by a chest x-ray. Now being in deep trouble because all respondent could refer to was radiology, it asked, quote, what about a high-resolution CT scan? And Dr. McClintock said, quote, you can say it's suggestive of it, but it doesn't diagnose it. Then removing any way out, respondent asked Dr. McClintock if he had ever told Mrs. Quick that her husband had died of co-worker's pneumoconiosis. And he said, quote, I never made that diagnosis while he was alive, and I didn't treat him after he was dead. It's a quote like that that makes average lawyers have better-than-average cases. Dr. McClintock said that if a board-certified pathologist performed an autopsy and diagnosed pneumoconiosis, complicated pneumoconiosis, and other lung disease, he would defer that pathologist's judgment. He said that if that pathologist agreed with the event of aspiration pneumonia and said that the underlying pneumoconiosis made Mr. Quick more susceptible to the pneumonia and made it more difficult to recover, he would agree with that. He agreed with Dr. Goodwin. Then he said that most aspirations are multifactorial, and he gave a list of the possible causes. One of those was scarring of the lungs, and that's something that's seen in the records as well as the autopsy. So let me ask you about Dr. Selby's opinion, because obviously he's going to rely heavily on that. The arbitrator credited the medical opinion of Selby as well as McClintock over the opinion of Dr. Goodwin. In particular, he owned in on the fact that Dr. Goodwin's opinion carried less weight because he did not review the decedent's medical records. Is that relevant at all? Well, it's relevant to show that... Is that true he didn't review the medical records? Absolutely not. He didn't review them, and it is very relevant because it shows where the case falls apart for the defendant, for the respondent. When you have an autopsy, you don't need medical records. You've got the tissue. In fact, I think any pathologist worth his salt would say, I don't want the medical records. I just want that piece of tissue because I'm going to tell you what's in that piece of tissue, how it fits in with the rest of your problems and your clinical assessment. You work on that. So, no, he didn't have the medical records. There were other reasons for it, but the main reason is he didn't need it. Why spend the money on it? Did Dr. Goodwin give a causation opinion? Yes. He looked at 16 slides. He said there was not only pneumoconiosis but progressive massive fibrosis. He testified that he put it under polarized light and saw the silica. It lights up. It sparkles when you put that polarized light on there. And he saw the coal dust. And there's only one thing that causes coalworkers pneumoconiosis, and that's the silica and the coal. And he said that it was aspiration pneumonia that was the immediate cause of death, but only so because of the main problem, which was the severely compromised lungs, that that fell on top of. It was the accident waiting to happen. Had it not been for the severe pneumoconiosis, he would not have expected him to die. Did Dr. Goodwin say that? Yes. I thought he admitted he was not asked to opine whether there was a causal relationship between CWP and the cause of deceased death. No. In fact, that's the problem here. If you look at the argument in the briefs and you look at the decision of the arbitrator, there's so much about what caused the aspiration pneumonia. And that's all the cause questions that are in this deposition. And Dr. Goodwin said, it doesn't make any difference what the cause of the aspiration pneumonia was. That's not my problem. The aspiration pneumonia has pushed him over the edge all right, but the edge was created by the coalworkers' pneumoconiosis and the severity of it. In fact, he measured the lungs and the bronchi, he said, were 20 times their normal diameter, which makes them a notorious place, in his words, a notorious place for the gathering of the regular mucus and other debris. So that this man, when his aspiration only hit him, it was the compromised lungs that made this aspiration pneumonia cause his death. Couldn't his lungs have been compromised by a number of the other conditions that he has that have nothing to do with CWP? Are we saying this man would not have died the way he did without the CWP? Well... That seems to be the whole rub here. I really want to answer that question, but the problem is there's nothing in this record but CWP. In other words, if Respond had brought forth some of those, if Selby had brought forth some of those, said, oh, this guy had terrible lungs, I don't think he got CWP at all. He had pneumonia, he had GERD, he had dementia, he had a whole bunch of other things that indicated could have played a role in what happened to him. Well, let's go over those one at a time. The dementia probably could have been one of the things that caused him to have the aspiration pneumonia. He wasn't aware. But again, the aspiration pneumonia is not the sole factor. A causative factor is the significant compromised lung, the damage in the lung that meant he couldn't recover from it. And this, in all the widow's cases, this is what happens. Like when a guy dies of cancer. Yeah, he's going to die of that cancer. But what's the terminal event? Well, if it's pneumonia, he's got chronic lung disease, we prove a causative factor that way. And this is very similar in that he had aspiration pneumonia. It doesn't make any difference what caused it. When he had it and not everybody dies from it, his weakened lungs were what put him over the edge. That was Dr. Goodwin's opinion. And so all the talk, anybody that says the cause of the aspiration pneumonia is important, that's what I would disagree with. I would stipulate that it may not have been the pneumoconiosis. So what's your take on Selby's opinion? Well, Dr. Selby was, you know, he had empty guns. Dr. Goodwin, he felt the tissue, he cut the lung tissue, he put it under a macroscopic examination, he put it under a microscope, he took pictures there with his deposition of the macroscopic, he took microscopic photographs and described in detail. Here's the macule, here's the fibrosis, here's the emphysema. He measured the bronchi, okay? So he had all of that. Dr. Selby is a bee reader, but he didn't look at any x-rays. He didn't see any CT scans. He didn't see any path slides. All he saw were the medical records. And two problems with that. Number one is the author of a lot of those medical records, in fact, the one that was called to testify by respondent, agreed with Goodwin, not with Selby. So Selby, I think, he's just put in the wrong place. This fact pattern could have been changed with the introduction of other evidence if another pathologist had been brought in by respondent, then there could be a weighing process between the two pathologists. Now Selby did review, admittedly, the records from Goodwin, correct? He saw the autopsy findings, et cetera, didn't he? I'm sorry, could you ask the question again? Didn't Selby review Goodwin's findings before he made his opinion? I'm not sure of the chronological review of that. I don't know that it would have made any difference. He probably did. He saw the autopsy, yes. He didn't have the deposition, I don't think. Yeah, the autopsy. And the point is, so look at his testimony, and find anywhere in there that he says, well, yeah, I saw it, and I saw the slides, and I disagree with X or Y. Or I saw the pictures, and they don't show X or Y to me. Or did he take the measurements that Dr. Goodwin came up with and said, well, look, put the ruler on there. It's not 20 times dilated. It serves a regular size. There is no contrary evidence brought against Dr. Goodwin's opinion by Dr. Selby, and to be truthful, he couldn't. In this case, it wasn't his fault. I mean, he did what he could with what he had, but he didn't have the tools. Which brings up another point here, and that's a weighing process between Goodwin and Selby. Is that legally possible? They did two different things. I'm searching for an analogy. I don't know that I can. But Goodwin looked at no medical records. He looked at the tissue, which is what counts. Selby didn't look at any tissue. He looked at medical records. So they could both be greatly credible, but you can't compare them and say, well, and therefore I choose Selby. What you've got to look at is the tools they had and what they came up with. And so one of the things that troubled me when I was getting ready for today is, how do I prove to you that Justice Hoffman's not here today? I thought he was going to engage me in this conversation. But the question is, how can I stand out here and say that an autopsy is better than X-rays? Well, the first thing I'd say was Selby didn't see any X-rays. But beyond that, I would say let's say that you, any one of us, has X-ray evidence of a lesion on our lungs. We go back in a few months. It's taken again and it's grown. We have a 50-pack year history of smoking. Now, on that report, as you may have seen, it will always say that they can't rule out a carcinoma because it's just a shadow. You have to have the biopsy to figure that out. Now, also, not only can it not rule it out, it can't tell you whether it's adenocarcinoma, large cell, small cell, whatever different kind. There are six different kinds of lung cancer and they take six different kinds of treatment. In other words, the big test is the biopsy. And the arbitrator or commissioner who will say, well, yeah, okay, I want a biopsy to know what kind of treatment, they're going to probably agree with Dr. Goodwin. They shouldn't. The arbitrator says, oh, I don't care what it is. Just start some kind of treatment on me right away. Well, they might agree with Dr. Selby. But the point is, when you're looking at x-rays or CT scans, which you didn't even look at, you're just looking at shadows. And as Dr. Goodwin said, I've got the advantage. I don't have just shadows. I've got the tissue itself. Your time is up. Thank you. Thank you, counsel. Counsel, you may respond. Thank you. Good morning. Good morning. May it please the Court. Mr. Resor, Kevin Haislip for the respondent. I think counsel and I read completely different arbitrators' decisions in all the years. This is one of the better, well-written, well-reasoned, well-thought-out decisions I've seen in a long, long time. The arbitrator did an excellent job going through all the evidence, the sequence of evidence, and what happened and what didn't happen. I completely disagree with counsel's comments that Dr. McClintock's deposition testimony and his records support Dr. Goodwin. They don't support it in any way, shape, or form. If you take one part of his deposition out of context just a little bit, then it kind of goes your way somewhat. But the arbitrator quoted from Dr. McClintock's records and deposition in her decision and clearly indicates in there why she believed that Dr. McClintock disagreed with Dr. Goodwin. Plus she said, Dr. Goodwin's not some independent pathologist here. He was brought in by the family. They planned this all in advance and knew he was going to die and hired an attorney to find Dr. Goodwin and bring him in to do a very limited, very quick autopsy in unusual circumstances in a funeral home. All this was discussed by Dr. Selby in his testimony. And he wrote her a 31-page report. He tells us in his deposition and even in his report the mission of the family to him. We want you to do this autopsy and just tell us whether he has black lung. That was the mission. And there's no dispute about that? No dispute about it. Well, pathology does show he had CWP and you don't dispute that. It's causation that's the issue. Well, before I started taking the depositions and even depositions since this, I probably would have 100 percent agreed with you. It's hard to argue with a pathology slide. But I know a little bit more about it now and I don't necessarily agree with that in every circumstance. It is strong evidence of CWP, but it doesn't help this case. This would be a great case if they got some type of biopsy and if we were here on a regular minor's claim, does he have co-worker's pneumoconiosis? I would say that would be very strong evidence. The problem in this case for the petitioner is he lived 84 years and there is not really any evidence in this record of breathing problems or co-worker's pneumoconiosis. Sometimes patients will even tell their doctor, I'm a co-minor for 30 years, I got black lung. Whether they have it or not, we don't know. But is that in a medical record? It sure is because that's what the patient gave as a history. It doesn't mean much, but that's how things like that get into medical histories. But counsel told you that these medical records aren't that important. Causation. As the arbitrator points out in her decision, there is one issue here and one issue only. What caused the death? And even if you, well let's give him the fact that he had pneumoconiosis, does that still improve the death case? Of course he had co-worker's pneumoconiosis. That's exactly what she said in her decision. If the medical records aren't that important, why did shortly after writing his report, did Dr. Goodwin contact petitioner's counsel or the family and say, I'd like to look at those medical records. I want to look at the medical records and not only that, he wrote a letter to the attorney requesting the medical records, and on top of that he said, well, the doctor has some employment history too. He was told by the funeral director that this gentleman worked as a coal miner for about six years. I think he saw what he saw and said, well, that doesn't mesh with six years of exposure to coal dust. But Dr. Goodwin specifically asked for the medical records, and when I asked him about that on cross-examination, why didn't you get the records? His only thing was, well, maybe it was expensive for them to give me the records and have me review them because it would cost money. I'm sure he wasn't cheap going from wherever he was to a funeral home in southern Illinois to do an autopsy and write a 31-page report. That's fairly expensive too. You have a case like this, you know, you don't really chance on getting medical records reviewed by your specialist and the doctor you're going to rely on. But he writes the report. Nowhere in that report, 31 pages, does he say aspiration pneumonia was caused by this and it was aggravated by and partially caused by his exposure to coal working pneumoconiosis. That was an opinion he gave one time, one time only in a letter, in response to a letter from the attorney in February, March 2005. So when he testified, he did not give that causal connection opinion? He gave the opinion. I objected to it because nobody had provided me that opinion before the deposition. The arbitrator overruled my objection, but that objection was there. That opinion came out in the deposition. I want to key on something you just said there. You said whether the aspiration pneumonia was caused by the CWP. That's not really the question, is it? The question is whether the CWP was a cause of his death. You know, the issue, he could have survived the aspiration pneumonia had he not had CWP. Isn't that really what the issue is? And there's no evidence in this record, Your Honor, that but for the CWP, I'm trying to, there's no evidence in this record that the CWP was there to the point that it would have caused or aggravated the aspiration pneumonia. But Dr. McClintock's testimony on that single point of cause of death, he knew about the GERD. He knew about these other medical conditions. But what he said, I even remember it was in the afternoon when I got the phone call. What came to mind was Mr. Quick has a sclerosis. I'm not sure of the medical term, but he's bent over. And he said, that's what I remember about that afternoon and about what possible causes were. But it seems to me that if you really want to know the cause of it, if you're the petitioner, is get all the medical you can, get it to your expert, Dr. Goodwin, or some other expert, and here are the records. But when you don't give the records to the doctor after the doctor requests the records, that's a telling sign of something. And I even questioned Dr. Goodwin about that. I said, well, I knew he didn't have the records. He had said in a few questions earlier, you know, I haven't seen the records. Then I asked him a couple of points about the records, and his snide remark to me was something like, how many times do you have to be told, or what part of my answer did you not get? I didn't have the records. Well, I asked the question because I just wanted him to reaffirm he didn't have the records. That's my whole point in that deposition is, you're making an opinion based on this one thing that you're looking for, which is co-workers' pneumoconiosis. But if you have, the interesting thing here would be, when you have pulmonary massive fibrosis to the degree that Dr. Goodwin says, it's in an x-ray. It's somewhere. This gentleman had many, many x-rays. Nobody reviewed them. Dr. Selby looked at the x-ray reports, and there's nothing in there. Dr. Selby did a very good job going through the records and the reports. It's not a question of having to look at x-rays, but that pulmonary massive fibrosis didn't develop in years 83 and 84 of his life. That was there for a long time if he had it. But Dr. Selby explained why you've got to be a little bit careful with just assuming that we have a pathologist who has slides, who has tissue, therefore there's co-workers' pneumoconiosis. Dr. Selby, I think, in all the cases, does one thing well. He looks at the entire picture of the patient. He looks at the records. He looks at his exam. He looks at different x-rays over different periods of time, different pulmonary function studies. He doesn't just say, you know what, I took an x-ray. I read it as being negative. That's not much of an argument. But when he's presented with a case such as that, he goes through everything. He looks at the records. I even sent him the record of Dr. Goodwin and had him look at it, and he explained, as the arbitrator pointed out, you know, don't just take one little thing, a slide or 15 slides or whatever. You've got to know all the circumstances of it. But we know that Mr. Quick died. We know the cause of death, and it was the aspiration. I just keep trying to formulate this in my mind, and maybe I'm missing something here, and I certainly could be. But it seems like we're arguing a lot about whether or not the proof shows that he did have CWP. But it seems to me like the question is, even assuming he did have CWP, is there sufficient evidence in the record for the commission to conclude that the CWP was not a contributing cause to his death? Isn't that what our issue is? Absolutely. That's both positions. And so my question is, is there sufficient evidence in the record, even assuming he had CWP, that the CWP was not a contributing cause? I think the sufficient evidence would be the medical records, number one. Number two, Dr. McClintock's testimony as to the cause. I mean, if Dr. McClintock was seesawing here and he was thinking, you know, it could have been this, you know, it could have been that, he was focusing on what was causing the causes of aspiration. But just by exception, he sort of ruled out CWP as a cause. Well, didn't he rule out the existence of CWP? Well, he testified he never diagnosed it. You're right. He's saying the only way you know is to cut them open and look. Is that basically a summary of the evidence? I'm not sure if that's – I think it could be read that way, but I think we all know that that's not right, simply because how many times have we up here in a regular minor's claim and the principal evidence is X-ray evidence? Not only that – I hope I'm not embarrassing myself – but I think it's this court that said that X-ray evidence by its own of a condition establishes disability. Well, I know, but don't we have Reynolds as this kind of doctor, which we've all met here and there, says that, you know, I don't believe in pictures, I've got to go touch it? I mean, that was the characterization of opposing counsel of Reynolds. I don't want to make any opinion about whether it exists or not, because there's only one way to know whether it exists or not, and that's autopsy. Are you referring to McClintock? Yeah, I guess McClintock, yeah. Is that McClintock? Which doctor was it? McClintock's a treating physician. Yeah, treating. Maybe that was McClintock then, yeah. In all candor, I don't recall seeing that quote or that testimony here. Oh, no, I'm characterizing it. Yeah, that could be a fair characterization, but, you know, we all deal in the real world in the real world. What do all the records say? What do all the X-ray reports say? Very good pulmonary function studies. And if we're talking about simple one-slash-zero co-worker's hemoconiosis that was really established by pathology, but... Well, what you're saying is that Selby does that whole comprehensive of everything, right? Absolutely. Now, he looks at everything, and the fact that Goodwin was denied the medical records is telling here. And the arbitrator did a very good job explaining why McClintock and Selby contradict Dr. Goodwin, and she did an even better job when she, at the end, explains why and says, I find no medical basis for Dr. Goodwin's opinion concerning the cause of death. She's hit the nail on the head here. She's focusing on the issue before her, which is cause of death. Not the cause of CWP and whether he had CWP. Okay. On Selby, I mean, my understanding was he acknowledged that the pathological evidence showed pneumoconiosis, but he said that pathological evidence does not necessarily equate to impairment or disability during life, and he said DeSedin's case was a perfect example of abnormal pathology while maintaining normal physiology in clinical testing. So, I mean, it gets back to what I'm trying to ask here about even if we assume he had CWP. I mean, Selby didn't say he did not have CWP. He said he had. Well, he did at the very end. He does. Oh, he does. But equivocally say he does not have CWP. Oh, okay. Because of the lack of any showing of impairment. Because. Okay. Because the only thing shown to him of CWP is Dr. Goodwin's testimony that I looked at slides, therefore he has it, and Selby's just saying, hey, wait a minute. We don't throw out everything else in the bathwater for this guy's opinion. We have 20, 30 years of history and medical records and all of this, and we just can't throw that out. Okay. That's what I'm trying to say. Thank you, counsel. The man was an underground coal miner for 45 years. He never smoked cigarettes. As to the opinion or the statement in the counsel made here, and as was in the decision, it's the third legal error, I believe, that was the arbitrator's conclusion that there's no indication in any of the medical evidence that Mr. Quick ever complained of or was treated for any employment-related pulmonary condition of ill-being. Can't be more wrong than that. There can't be any question that Mr. Quick complained of and was treated for pulmonary conditions of ill-being. In the records, over the years, he had 18 chest X-rays and one CT scan. Fibrosis was found five times in the treatment X-rays. Scarring was found two times. COPD once. The CT scan found emphysema and Ebola, which means a hole of at least one centimeter or greater. Over the years, he was prescribed Levaquin, Asmocort, Allupin, Ventolin, Theodore, Provento, and Ampicillin. His records show entries of bronchitis 14 times. Hospitalization for pneumonia four times, and that's not including the terminal hospitalization. COPD three times. Asthma three times. Asthmatic bronchitis two times. And black lung was mentioned three times. As to complaints and physical findings, cough was listed nine times, and there were 11 entries of decreased breath sounds, bronchi, or wheeze. In other words, what counsel said about there's no history of this guy having problems, he lived 84 years, that's just not right. It's not right when the commission said that that wasn't there. But what's really not right is the commission indicating that there's no possible relation of these things to his work. Because we all know that fibrosis, Goodwin and Selby said that fibrosis is what coworkers' pneumoconiosis is. It's found in five different treatment X-rays. Scarring is what it is. It's found in two treatment X-rays. A part of coworkers' pneumoconiosis is emphysema. Emphysema is a COPD. Emphysema was found on the CT scan. COPD was found on X-rays. This man had bad, bad lungs, and that's what the autopsy showed. Now, as to the chronology that counsel's bringing up here about the autopsy, what happened in this case is the man dies, the widow wants an autopsy, she tells the funeral director, I want an autopsy. The funeral director calls Dr. Goodwin. I didn't know Dr. Goodwin at this time. And he says, I want an autopsy. And Dr. Goodwin says, can't do it. I'm a forensic pathologist. I have to have that order from a lawyer. So the funeral director goes and finds a lawyer who I didn't know before, don't know now, I can't even remember his name, to call Dr. Goodwin and say I'd like to order an autopsy. Dr. Goodwin did it. It took a few days to get this thing done, but he did do the autopsy then. And I didn't see Dr. Goodwin until that autopsy was over. I saw no records. I didn't ask him, please write this. Please investigate this. Just look for disease only. The widow did that. But later on the question was asked, and before the deposition, was it causally related to the death? And I think he knocked that one out of the park. So like I said, it was an unusual case, and I don't know that lawyer. I'm never going to meet him again. This was an 84-year-old man who had all kinds of problems. A lot of them were his lung problems. But I'm not going to say that it had to do with causing the aspiration pneumonia, because I don't know. It could have been. It would be speculation, but I don't need that. Thank you. Thank you, counsel, both for your arguments in this matter this morning. It will be taken under revised by us and a written disposition shall issue.